LOUIS S. Ederer (admitted *Pro Hac*)
Louis.Ederer@aporter.com
JOHN C. ULIN (State Bar No. 165524)
John.Ulin@aporter.com
JAMES S. BLACKBURN (State Bar No. 169134)
James.Blackburn@aporter.com
ERIC D. MASON (State Bar No. 259233)
Eric.Mason@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC. d/b/a MISS ME, a California corporation and RCRV, INC. d/b/a ROCK REVIVAL, a California corporation.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>LA IDOL FASHION, INC., a California corporation.<br><br>　　　　　Defendant. | Case No.: 11-Civ-06849 (SVW) (FFMx)<br><br>Hon. Stephen V. Wilson<br><br>**DECLARATION OF JAMES S. BLACKBURN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO INTERROGATORIES BY DEFENDANT**<br><br>**DISCOVERY MATTER**<br><br>Date:<br>Time:　　　　　　10:00 a.m.<br>Courtroom:　　　　E<br>Judge:　　　　　　Frederick F. Mumm<br><br>Discovery Cutoff:　None Set<br>Pretrial Conference: February 27, 2012<br>Trial:　　　　　　March 9, 2012 |

I, James S. Blackburn, declare as follows:

1.  I am a partner with the law firm of Arnold & Porter LLP, counsel of record to Plaintiffs Sweet People Apparel, Inc., d/b/a MISS ME ("Sweet People") and RCRV, Inc., d/b/a ROCK REVIVAL ("RCRV") (collectively, "Plaintiffs").

2.  I submit this declaration in support of Plaintiffs' motion to compel the production of documents and further responses to Interrogatories by Defendant LA Idol Fashion, Inc. ("Defendant" or "LA Idol"). Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify thereto.

3.  Plaintiffs Sweet People and RCRV instituted this action on August 19, 2011. Dkt. No. 1. Thereafter, on September 16, 2011, Plaintiffs filed an Amended Complaint. Dkt. No. 9.

4.  On September 19, 2011, Plaintiffs filed a motion for preliminary injunction to enjoin Defendant from continuing to distribute, offer for sale and sell jeans bearing the infringing designs during the pendency of this action. Dkt. No. 11.

5.  On October 11, 2011, the District Court, after considering the evidence and arguments submitted by the parties in connection with the preliminary injunction motion, determined that Plaintiffs (i) demonstrated "a strong showing on the merits of their copyright and trademark claims"; (ii) "made a sufficient showing of a likelihood of irreparable harm"; and (iii) demonstrated that "any potential harm to Defendant is slight in comparison to the harm to goodwill and reputation that Plaintiffs will suffer if an injunction is not issued." Indeed, the Court found Plaintiffs' evidentiary showing so compelling, and Defendant's so lacking, that the Court stated that the possibility that Defendant would prevail in this action was "remote." Dkt. No. 31 at 7-9.

6.  In its October 11, 2011 Order, the Court also converted the preliminary injunction hearing date, set for October 17, 2011, to a status conference. On October 17, the parties participated in a status conference before the Court. During

that conference, the Court set, *inter alia*, a trial date of March 9, 2012.  The Court did not, however, establish a discovery cut-off date for this action.

7. Immediately following the October 17 status conference, Plaintiffs' counsel wrote to Defendant's counsel requesting that he participate immediately in a Rule 26(f) scheduling conference for the purpose of, *inter alia*, discussing certain pretrial dates for this action.  Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' counsel's October 18, 2011 letter to Defendant's counsel proposing a Rule 26 scheduling conference.

8. Due to Defendant's counsel's schedule, the parties did not hold a scheduling conference until November 1, 2011.  During that conference, the parties agreed to a case management schedule providing that fact discovery would end on January 13, 2012.  Dkt. No. 50.  The parties' proposed case management schedule was lodged with the Court on November 7, 2011.  *Id.*  To date, however, the Court has not issued an order memorializing the dates proposed by the parties and, thus, there is no discovery cut-off date set in this action.

9. Given the aggressive case management schedule, on November 1, 2011, immediately following the parties' Rule 26(f) conference, Plaintiffs served their First Set of Requests for Production of Documents and Things ("Document Requests") and First Set of Interrogatories ("Interrogatories") on Defendant.  Attached hereto as Exhibits B and C are true and correct copies of Plaintiffs' Document Requests (Exhibit B) and Interrogatories (Exhibit C).

10. In the Document Requests and Interrogatories, Plaintiffs requested documents and information relevant to the parties' claims and defenses.  In particular, Plaintiffs requested, *inter alia*, documents and information concerning the designs at issue, including (i) Defendant's sales; (ii) expenses incurred and profits realized from Defendant's sales; (iii) the creation, design, selection and use of such designs; (iv) advertising, marketing and promotional materials; and (v) Defendant's

communications, including with its manufacturers, suppliers, customers, agents and/or employees, concerning the designs.

11. Defendant's responses to Plaintiffs' Document Requests and Interrogatories, along with its document production, were originally due on December 5, 2011. At Defendant's counsel's request, Plaintiffs agreed to extend Defendant's response time twice, from December 5 to December 8, and then from December 8 to December 12. These extensions were granted based on Defendant's counsel's representation to Plaintiff's counsel that Defendant would deliver its responses and responsive documents to Plaintiffs' counsel by no later than December 12, 2011. Attached hereto as Exhibit D are true and correct copies of correspondence by and between me and Defendant's counsel Christopher Diener concerning the timing of Defendant's responses to Plaintiffs' Document Requests and Interrogatories, along with its document production.

12. Notwithstanding Defendant's commitments to provide its written responses and documents by December 12, Defendant did not actually serve its responses and documents until December 14, 2011. Plaintiffs never agreed to, and Defendant never requested, an extension of Defendant's response date from December 12 to December 14, making Defendant's written responses untimely. Attached hereto as Exhibits E and F are true and correct copies of Defendant's responses to Plaintiffs' Document Requests (Exhibit E) and Interrogatories (Exhibit F).

13. Defendant's entire document production consisted of *one* email inviting its customers to an industry trade show; two post card-style advertisements; sales summaries and invoices concerning certain of the designs at issue; and several receipts purporting to identify the customers who purchased products from Defendant at the trade show. Defendant produced *no* documents concerning any of the other categories requested by Plaintiffs. Defendant's interrogatory responses similarly were deficient.

14. Given the deficiencies with Defendant's document production and its incomplete responses to Plaintiffs' Document Requests and Interrogatories, on December 19 and 20, 2011, I sent two letters to Defendant's counsel requesting a meet and confer conference pursuant to Local Rule 37-1. Those letters set forth in detail Plaintiffs' concerns regarding Defendant's responses to the Document Requests and Interrogatories and Defendant's document production. Attached hereto as Exhibits G and H are true and correct copies of my letters dated December 19, 2011 (Exhibit G) and December 20, 2011 (Exhibit H).

15. Thereafter, on December 21, 2011 I received an email from Defendant's counsel inquiring as to my availability for a telephone conference to discuss several pending issues on December 22, 2011. In response, I informed Defendant's counsel that I was available to speak with him at 11:30 a.m. on December 22, 2011 and that I would call him at that time. Thereafter, on the morning of December 22, I received an email from Defendant's counsel indicating that he had a conflict and needed to reschedule our call for December 23. I subsequently confirmed with Defendant's counsel that I would be available to speak with him on December 23, 2011 at 11:00 a.m. Attached hereto as Exhibit I are true and correct copies of the above referenced emails by and between me and Defendant's counsel.

16. While Defendant's counsel indicated that he was available to confer with me on December 23, 2011 at 11:00 a.m., when I called Defendant's counsel at that time, he stated that he was out of the office and did not have the time to meet and confer. Defendant's counsel subsequently informed me that he would be sending me a letter on December 26 responding to our letters. I did not receive any letter from Defendant's counsel on December 26 addressing the outstanding discovery issues or any other issue.

17. On December 29, 2011, I sent Defendant's counsel a letter demanding that he participate in a "meet and confer" conference that day, as it was the last day to confer concerning our December 19 and 20, 2011 letters. Attached as Exhibit J is a

5

true and correct copy of my December 29, 2011 letter to Defendant's counsel. In response, Defendant's counsel indicated that he would respond to our deficiency letters on December 30, 2011. Attached hereto as Exhibit K is a true and correct copy of Defendant's counsel's December 29, 2011 email correspondence.

18. Despite Defendant's counsel's promise to provide a response to our letters of December 19 and 20, 2011, Defendant's counsel failed to respond to our letters that day. Instead, Mr. Diener sent me and my colleagues Louis Ederer and Alan Veronick an email promising again to address "numerous [] issues involved in this matter" by separate letter and requesting that Plaintiffs agree to a continuance of the current trial date. Attached hereto as Exhibit L is a true and correct copy of Defendant's counsel's December 30, 2011 email correspondence. Thereafter, I sent Defendant's counsel an email on December 30 indicating that we would reserve comment on his request for a continuance until we received his letter. Attached hereto as Exhibit M is a true and correct copy of my December 30, 2011 email to Defendant's counsel. To date, however, Defendant's counsel has sent no such letter.

19. While Defendant's counsel has failed to send us any letters responding to the points raised in our letters of December 19 and 20, despite repeated promises that he would do so, on January 3, 2012, I spoke with Defendants' counsel concerning several outstanding issues, including the issues raised in those letters. The parties, however, were unable to resolve their differences during this conference.

20. Defendant sells products to certain of its retail customers over the Internet via its member's only website located at www.laidolfashion.com and this website appears to depict Defendant's product line.

21. Attached hereto as Exhibit N is a true and correct copy of the Court's October 25, 2011 Preliminary Injunction Order.

22. Attached hereto as Exhibit O are true and correct copies of the Additional Allegedly Infringing Designs.

6

23. Attached hereto as Exhibit P is a true and correct copy of Exhibit H to Plaintiffs' Amended Complaint.

24. Attached hereto as Exhibit Q is a true and correct copy of the Declaration of LA Idol's President, Nancy Yih, in Support of Defendant's *Ex Parte* Application for a Stay of the Court's Preliminary Injunction Order.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of January 2012 at Los Angeles, California.

*[signature]*
JAMES S. BLACKBURN